HARDY, Judge.
Plaintiff sues defendant for the sum of $783.36 alleged to be due on an unpaid invoice for warehousé stocks. By way of defense it was first asserted that a transaction and compromise had been entered into and consummated between the parties, which negotiation should be construed as the authority of a thing adjudged between the parties; alternatively that by its conduct and representations plaintiff was es-topped to urge its claim to the amount involved, and, finally, adopting the position of plaintiff in reconvention, and, further, pleading alternatively, defendant claimed the sum of $2,080 as damages for plaintiff’s alleged breach of contract. After trial there was judgment in favor of plaintiff for the amount prayed, further rejecting reconventiohal demands of the defendant, from which judgmerit the defendant brings this appeal.
The facts appear to be largely without dispute. On July 8, 1947, plaintiff corpo *220 ration, ■ Mrs. Tucker’s Sales Company, entered into a 'distributorship .contract with one Howard -S. Judd, under which the parties assumed certain specific obligations. Judd was the operator of certain cold storage space in Shreveport and Baton Rouge, and plaintiff agreed to maintain k stock of margarine for Judd’s withdrawal, both as a distributor and a wholesaler. Stocks we.re withdrawn from storage on invoices to Judd, who customárily paid for same1 weekly, subject to such terms of discount as were in effect.The right to cancel the existing agreement was reserved to either party upon thirty days’ written notice of such intention.
Shortly after the date of the. agreement Judd organized a corporation styled Howard S. Judd, Inc., which was intended to operate a wholesale food distributing business. The interests of Judd and his corporation appear to have been interchangeable, and no formal assignment of the warehousing and, distributing contract was made by Judd.to the corporation.
It'appears that sometime during the latter párt of the- :month of July, -1948, Judd determined tc retire from the business and to sell his stock in the corporation to his associates. This information was communicated'to'plaintiff’s home office in Sherman, Texasj and negotiations-were entered into by Mr. J. V. DeFord, an authorized representative of plaintiff, and Judd with reference to the settlement of existing accounts, 'plaintiff company being unwilling to continue the distributorship agreement with Frosted Foods, Inc., the successor to Howard S. Judd, Inc., as provided by a charter amendment following Judd’s withdrawal from the business.
There seems to have been no real disagreement or dispute in the course of the settlement between plaintiff and Judd, which was incorporated in a memorandum prepared by Judd on a letterhead of Howard S. Judd, Inc., which reads as follows:
“8/5/48
Memorandum:
The following merchandise is to be invoiced to Howard S. Judd, Inc., Shreveport, La. and includes check out tickets no. 18, 19, 20 and 21:
48 cs. 12/1 Uncolored Meadolake Margarine 53 cs. 121/4 Colored “ “
88 cs. 301/4
32 cs. 30/1 “ “ “ $4624.44
Credit to be issued for:
4 cs. 30/1 Uncolored “ “
1 cs. 30j4 Colored “ “
495# Colored Quarters B/O
39# Uncolored Meadolake B/O
Total amount credit 241.35
C/M No. 5 31.85
Discount 43.83
Net Total 4307.41
The above amounts will close the account in full of Howard S. Judd, Inc. and will relieve Howard S. Judd an individual of all responsibility imposed by warehouse contract.
Mrs. Tucker’s Foods, Inc.
Mrs. Tucker’s. Sales Co.
By (sgd.) J.V. DeFord.”
*221 Within a few days after the completion of the above settlement DeFord ascertained the existence of an additional withdrawal ticket, numbered “17”, which had not been included in the above statement, and was in transit at the time of the preparation thereof. This ticket No. 17, in the amount of $783.36, representing mágarine withdrawn from plaintiff’s warehouse stock in Shreveport, invoiced to and received by Howard S. Judd, Inc., was not considered by the parties in the settlement, although Judd should have known of its existence at the time. In any event, there is no dispute as to the fact that the ticket represented an unpaid invoice which was due and owing.
In the light of these facts we pro^ ceed to a consideration of the first defense, the execution of an agreement of transaction and compromise. In the confection of any such negotiation three concurring elements must have been present, namely: a disputed claim between the parties; a tender in full settlement; and an acceptance of the tender. This principle was enunciated by Mr. Justice McCaleb in Davis-Wood Lumber Co., Inc., v. Farnsworth & Co., Inc., La.App., 171 So. 622. The enumerated requisite elements are not present in the instant case. There was no disputed claim between the parties and the failure to include the undisputed ticket No. 17 was purely an oversight and such error could not preclude plaintiff’s right to assert claim to the amount represented therein.
Neither do we find any element of estop-pel upon the asserted ground of plaintiff’s conduct and representations. This contention appears to be predicated upon the conclusion that plaintiff was obligated to consider the effect of its contract as being with the Judd Corporation rather than the individual. Thé evidence does not justify such a conclusion. The only disagreement of any nature as between the parties at the time of closing out the existing agreement was the expression of dissatisfsection on the part of plaintiff not to, continue the distributorship with them. As pointed out by the district 'judge in his well reasoned opinion, the record fully substantiated the proposition that it was the act of Judd and not any act of plaintiff which brought about the severance' of the existing relationship. Under the facts as adduced we find nothing which would support the claim of estoppel against plaintiff.
Defendant’s claim for breach of contract rests upon the argument that plaintiff was guilty of the breach without giving the thirty-day written notice as required in the agreement. The damages claimed represent the alleged loss of profits for .a thirty-day period in the sum of $1,600, together with the additional amount of $480, being the cost of a Federal margarine license purchased by defendant for the fiscal year beginning July 1, 1948. We find nothing in the facts which would indicate any, breach of contract. The agreement, for all practical purposes, existed between plaintiff and Judd and the termination of such agreement was negotiated by Judd and plaintiff’s representative. While either party might have insisted upon the recognition of the thirty-day cancellation period, it is obvious that neither did so. Judd was the one who initiated the negotiations and it follows that he made, no insistence in this respect. Nor did plaintiff, which had an equal right to invoke the thirty-day clause, make any effort so, to do. The only reasonable conclusion is that the severance of the provision was mutually agreeable and acceptable. Certainly there was no breach on the part of plaintiff which resulted in any damage to this defendant.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.