BAILES, Judge.
This is a suit in contract. Plaintiffs, Mrs. Gladys Ann Billiot, together with her husband John Schrewe, Jr., appeal from the judgment of the trial court denying recovery for an amount allegedly owed by defendant for commissions on sales made by plaintiff.
Mrs. Gladys Ann Schrewe was employed by defendant, Scott Manufacturing Corporation, hereinafter most of the time referred to simply as Scott, as a representative for the sale of oil well tools, including centralizers, scratchers and stop collars manufactured by Scott. She was employed under a contract confirmed by letter dated December 19, 1958, signed by Jean Barth and E. R. Scott, president and vice-president respectively of Scott.
This letter is as follows:
“Following our various conversations, we herewith confirm that we authorize you to represent and negotiate for us in close cooperation with us in the endeav- or to develop the sales of our line of oil field equipment.
“According to our agreement, we shall remunerate your cooperation. We shall pay you a commission on each item sold *670 through your contacts according to the following stipulations:
“Centralizers,
approximately $2.00 each
Scratchers .70 each
Stop Collars (nothing for the time being, due to price war in the market)
“This commission schedule is subject to renegotiation should material and labor costs increase, and the price conditions on the market require any reasonable adjustment.”
The second alleged contract entered into between Scott, represented therein solely by Jean Barth, as president, and Mrs. Schrewe, was dated July 25, 1960. In the main, this contract provided for Mrs. Schrewe to be general sales promoter for Scott in Louisiana, Oklahoma and Texas and recognizes the previously existing contract with Scott on December 19, 1958.
The trial court, in written reasons for jrtdgment, found:
“In connection with the first contract and the commission due thereunder, by its very terms the commissions to be paid were in an approximate amount. Thus, it is indicated that the specific commission was not precisely set and was subject to modification. According to Mr. Edwin P. Seward, an officer of Scott Manufacturing Corporation, this flexibility was necessary in order to meet the competitive bids of other manufacturers. In the opinion of the Court the accepting of lesser amounts by the plaintiff of commissions due her produced the legal consequence of ratifying an adjustment or variation.
“As regards the second contract which substantially increased the amount of the commission, the Court is of the opinion that it is the ultra vires act of a corporate officer, not warranted by the Charter, or authorized by an appropriate action of the Board of Directors. For this reason it is unenforceable against the corporation, since it has not been proven that the corporation ratified the unauthorized actions of this officer.
“For the aforegoing reasons, the Court is of the opinion that the plaintiff has failed to sustain the burden of proof necessary to warrant casting the defendant in judgment for the relief she seeks.”
The appellant contends the lower court erred in holding that a specific rate of commission was not set in the first contract and in finding that the acceptance of lesser commission amounted to an accord and satisfaction; and further, in finding that the second contract of July 25, 1960, was unenforceable.
The record clearly establishes that from time to time plaintiff and defendant discussed the amount of commissions to be paid as the sales were developed. Because of the competitive nature of the business, the cost of and the short supply of steel by reason of the steel strike, and the cost of labor, the commissions paid to Mrs. Schrewe were considerably less than contemplated by the December 19, 1958 agreement. Such action was anticipated, however, in this agreement by the provision that the “commission schedule is subject to renegotiation should material and labor costs increase, and the price conditions on the market require any reasonable adjustment.”
The record amply demonstrates the fact that discussion did take place between Mr. Seward, vice-president and Mrs. Schrewe in the adjustment of commissions. She contended, on the one hand, for a larger sum and Scott offered a lesser amount. The exhibits filed in the record show that she did, in fact, accept payment of commissions in lesser amounts than those provided in the contract.
To support the doctrine of accord and satisfaction which defendant-ap-pellee contends for herein, it is necessary *671 that there exist a bona fide dispute or an actual and substantial difference of opinion as to the amount of commission due, that a lesser amount was paid than claimed to be due to Mrs. Schrewe, and an acceptance by her of a lesser amount. We find such facts exist in this case. The three essentials for accord and satisfaction are present herein, namely: A disputed claim, tender of a lesser amount in full settlement and an acceptance of the lesser amount in satisfaction of the debt. See Mrs. Tucker’s Sales Co. v. Frosted Foods, Inc., La. App., 68 So.2d 219 (1953); Peter A. Chopin, Inc. v. D’Antoni, La.App., 123 So.2d 669 (1960); Braudaway v. United Equitable Insurance Company, La.App., 208 So.2d 359 (1968).
Passing now to consideration of the July 25, 1960 contract, we find, as did the trial court, that the president Jean Barth, had no authority of Scott to enter into such an agreement. It was not known by either the vice-president, Mr. Seward, or Mrs. Kerkhoff, the secretary of Scott, that such an agreement had been entered into until the latter part of November, 1960. Barth had no authority from the Board of Directors of Scott to make such an agreement with Mrs. Schrewe. There was no resolution of the Board of Directors. Appellant testified that she met with Barth in a Chicago hotel where an agreement was reached as to the terms of the contract. While there is some question of whether the agreement was actually signed in the hotel in Chicago or a motel in New Orleans, it was an act ultra vires for Barth to bind Scott to appellant under such an agreement. It appears that the business, at this time, was under the management and direction of Mr. Seward and Mrs. Kerk-hoff as Mr. Barth was absent from the country, all to the knowledge of Mrs. Schrewe.
The authority of corporate officers at the time of the execution of this agreement of July 25, 1960 was controlled by the provisions of LSA-R.S. 12:35(C) which provides :
“All officers and agents shall respectively have such authority and perform such duties in the management of the property and affairs of the corporation as may be prescribed in the articles or by-laws, or, in the absence of controlling provisions in the articles or by-laws, as may be determined, from time to time, by the board of directors.”
The by-laws of defendant required the signatures of two officers of the corporation for such a contract.
Appellant has the burden of proving that the person with whom she dealt had authority to bind the defendant. The applicable jurisprudence is well set forth in the recent pronouncement of this court in North American Sales Alliance, Inc. v. Carrtone Laboratories, Inc., La. App., 214 So.2d 167 (1968):
“[4] * * * It has been well settled by our jurisprudence that any person attempting to enforce an alleged contract must first show that the corporate officer with whom he dealt had th'e authority to bind the corporation. This is. particularly true in those instances wherein the officer is exercising authority which contemplates more than the normal and usual power of an officer whose duty it is simply to manage the day-to-day business of the corporation. T. P. Ranch Co. v. Gueydan & Riley, 148 La. 455, 87 So. 234 (1921); Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (1957), and numerous citations therein.”
Furthermore, we find, as did the trial court, that Mrs. Schrewe failed to prove that the corporation ratified the unauthorized action of its officer.
We find that Scott has paid to appellant all that was due her under the effective agreement of December 19, 1958.
The judgment of the trial court is affirmed at appellant’s cost.
Affirmed.