THIBODEAUX, Judge.
This case involves the propriety of an alleged cancellation of a homeowners insurance policy issued to plaintiffs, Larry and Ruby Funk, by Louisiana Underwriters Insurance Company and Enoch Robert Boyt, d/b/a Statewide Insurance Agency. The *1020 trial court concluded that the defendants failed to prove a notice of cancellation was mailed to the Funks as statutorily required under LSA-R.S. 22:636 and rendered judgment in favor of the Funks. Additionally, the lower court awarded ten percent attorney’s fees for the arbitrary and capricious conduct of Louisiana Underwriters in failing to pay for the loss.
Louisiana Underwriters suspensively appeals and asserts one specification of error: the trial court committed manifest error in accepting the testimony of the plaintiffs.
We amend and affirm.
FACTS
On August 20, 1988, Louisiana Underwriters through its local agent, Statewide, issued a one year homeowners insurance policy to the Funks who paid the yearly premium of $383.00. However, Boyt committed an error in applying a discount and the Funks were billed on September 14, 1988 for an additional $41.00. This amount was paid by Rebecca Langley, Ruby’s daughter, on October 17, 1988.
Meanwhile, Kathy Duhon processed the Funks’ application in accordance with the normal guidelines of the insurance company which required Duhon to send an investigative firm to inspect the premises. The investigative firm determined that the home presented an unacceptable risk. Certain minor repairs were needed or the homeowners policy would be cancelled. Duhon testified that she mailed to Statewide and the Funks, on October 5, 1988, notification of cancellation of the policy to be effective on October 25, 1988.
Ruby denied receipt of the cancellation notice and claimed that she was unaware of her non-insured status until she recommended Judy Funk, her sister, to Statewide to obtain homeowners insurance. On March 6, 1989, Judy visited with Boyt at Statewide. Boyt told Judy that her sister, Ruby, did not have a policy with Louisiana Underwriters; that she “cancelled out on him.” On that same day, Ruby asked Boyt about the cancellation and requested that her premium be returned. On March 11, 1989, the Funks received a certified letter and the original cancellation notice which Boyt, somehow, possessed in his office and a refund of $315.00, representing the amount of the unearned premium. Ruby testified that this was their first written notice of cancellation.
Eleven days later, on March 21, 1989, the Funks’ home was destroyed by fire. Thereafter, the Funks, through their attorney by certified letter, sought to collect under the fire insurance policy. Louisiana Underwriters refused to respond.
ISSUE
Louisiana Underwriters alleges that the insurance policy on the Funks’ home was cancelled as of October 25, 1988. The Funks contend they did not receive notice of cancellation and were unaware they were uninsured until Ruby’s sister, Judy, called her from Boyt’s office on March 6, 1989 and told her about the cancellation. The issue is whether or not Louisiana Underwriters’ notice of cancellation was effective on October 25, 1988, rendering the Funks without coverage as of the day of the house fire.
LAW AND DISCUSSION
The trial judge’s written reasons for judgment concluded that the Funks never received the cancellation notice which Louisiana Underwriters contends was mailed on October 5, 1988. They were, therefore, covered by their homeowners policy as of the date of the fire which destroyed their home since twenty days had not expired from the date of receipt of the written notice of cancellation. Our review is limited to whether the trial judge, in reaching his conclusions of fact and law, committed manifest error or was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Rosell v. Esco, 549 So.2d 840 (La.1989). Rosell, supra at 844-845 teaches that:
Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the wit *1021 ness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong, (citations omitted)
The policy was to be in effect from August 20, 1988 to August 20, 1989.. Boyt, owner of Statewide, produced at trial a letter from Louisiana Underwriters’ office informing Boyt that the Funks’ policy was subject to cancellation because of its classification as an unacceptable risk. Boyt testified that he must have received this October 5th letter on October 8, 1988 because that is the date indicated by his date stamp. The cancellation notification stated that if certain repairs to the fence and gate surrounding the Funks’ above ground pool were not completed, the homeowners policy would be cancelled by October 25, 1988. Boyt also produced the original cancellation notice which he alleges was brought to his office, by a member of the Funk family. Boyt’s letter to the Funks on March 8,1989 regarding the cancellation of their policy and his testimony at trial indicate that he did not know nor could he explain how the original copy of the cancellation notice, intended for the Funks, ended up in his office. Moreover, Boyt merely assumed that the Funks received their copy on the same date that he received the agency copy. Boyt’s certainty that the original copy was not mailed to his office is based upon information given to him by Louisiana Underwriters. Duhon told Boyt that the notice was mailed directly to the Funks. Thus, there was no personal recollection by Boyt or any of his employees or any of the Funk family members dropping off the original notice of cancellation.
The requirements for cancelling an insurance policy are set forth in LSA-R.S. 22:636. The statute provides in pertinent part:
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(l)(a) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than twenty days prior to the effective date of the cancellation except where termination of coverage is for nonpayment of premium.
The purpose of notice of cancellation is to inform the insured of the imminent termination of his policy and to allow the insured sufficient time to obtain other coverage. Robertson v. Travis, 393 So.2d 304 (La.App. 1st Cir.1980), writ denied; 397 So.2d 805, 397 So.2d 806 (La.1981). “Actually delivered or mailed to the insured,” as reflected in LSA-R.S. 22:636, has been interpreted to mean a completed process, the transmission of notice through the U.S. mails. Proof of mailing establishes a re-buttable presumption of delivery; the presumption can be rebutted by affirmative proof of nondelivery. Robertson, supra; Hemperly v. Aetna Casualty & Surety Company, 516 So.2d 1202 (La.App. 2d Cir.1987).
Therefore, in order to prove cancellation, Louisiana Underwriters must show the notice of cancellation was actually mailed to the insureds. At trial, there was no document presented which revealed the date the cancellation notice was mailed. Duhon’s testimony disclosed the company’s normal process in handling insurance cancellations. There was no recollection by Duhon of mailing a notice specifically to the Funks. When asked by counsel for the Funks about her specific recollection of handling the Funks’ policy cancellation, Du-hon replied, “It’s like I said, they are all processed the same ... On this particular one? No sir, I remember the circumstances leading up to it.” We agree with Louisiana Underwriters that once the insurer proves by prima facie evidence that the cancellation notice was mailed to the insured, the burden of proof shifts to the insured to prove, by affirmative evidence, *1022 nondelivery. Ardoin v. Audubon Insurance Co., 434 So.2d 627 (La.App. 3d Cir.1983).
In his written reasons for judgment, the trial judge concluded:
Louisiana Underwriters states its normal process of sending notices of cancellation to its insured, but defendants did not prove that a notice of cancellation was mailed to the Funks on October 5, 1988. No receipts of mailing were provided by defendants. Louisiana Underwriters could not specifically recall mailing a notice of cancellation to the Funks.
Thus, because Louisiana Underwriters failed to prove that the notice was mailed to the Funks, the burden of proof never shifted to the Funks to prove nondelivery of the cancellation notice. Whether Louisiana Underwriters successfully proved their entitlement to the presumption is a factual determination to be made by the trial judge. He concluded it had not. We decline to disturb that finding.
Regardless of whether or not Louisiana Underwriters had proved notice was mailed, an insurer claiming a policy has been cancelled carries the burden of presenting facts which constitute positive and unequivocal proof that the policy was can-celled. Prados v. Reynaud, 550 So.2d 385 (La.App. 3d Cir.1989).
In this case, Ruby paid the premium for the entire year. Rebecca paid an additional amount toward the premium on October 17, 1988 which was after Boyt received his copy of the cancellation; yet, he accepted the payment. Furthermore, Boyt failed to apply for other insurance on behalf of the Funks until after March 6, 1989, the date Ruby first learned from Boyt about the cancellation. This indicates to us that Ruby never discussed the cancellation with Boyt in October of 1988. Moreover, there is no explanation as to how the original cancellation notice, meant for the Funks, came into Boyt’s possession. It is evident in Boyt’s letter to the Funks of March 1989 that he did not know how he came to possess the original. Ruby never requested a refund of her premium until March 6, 1989 which is a strong indication that the Funks believed they were still insured. Ruby highly recommended to her sister, Judy, that she obtain insurance with Louisiana Underwriters through Boyt’s agency. These factors adequately support the trial court’s determination that the Funks never received notice of cancellation.
PENALTIES AND ATTORNEY’S FEES
The trial court found that Louisiana Underwriters’ failure to pay was arbitrary and capricious. This finding is supported by the record and is not clearly wrong. It assessed ten percent attorney’s fees pursuant to this finding. This assessment was based, it reasoned, on LSA-R.S. 22:658. Since this action predates the 1989 and 1990 amendments to LSA-R.S. 22:658, the provisions which existed prior to those amendments apply to this case. The pre-amended version of this statute mandated a penalty of twelve percent damages on the total amount of the loss, together with reasonable attorney’s fees for the successful prosecution and collection of such loss.
The Louisiana Constitution authorizes an appellate court to review law and facts. See, La. Const, of 1974, art. V, § 10(B). Moreover, Article 2164 of the Code of Civil Procedure defines the scope of appellate review as follows:
“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.”
Cf. also Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The lower court judgment ordered the payment of “ten percent of principal and interest on all funds for which it is cast in the judgment as attorney’s fees.” As stated earlier, this provision flowed from the trial court’s interpretation of the penalty provisions of LSA-R.S. 22:658. This is incorrect. A proper application of LSA-R.S. 22:658 dictates the assignment of a twelve percent penalty on the total amount of plaintiffs’ loss.
Moreover, an award of $10,000.00 as reasonable attorney’s fees is appropriate. Counsel for plaintiffs vigorously pursued and obtained all of the relief request *1023 ed by his clients, filed pretrial and post-trial memoranda, participated in two depositions, prepared for and participated in the trial, and filed an appellate brief. Given the work performed and the commensurate result obtained this award is reasonable. A thorough examination of the record confirms this.
The judgment of the trial court is ordered amended to reflect these findings.
CONCLUSION
Our review of the record and the trial judge’s written reasons for judgment lead us to the inexorable conclusion that the trial court did not commit error, other than in its application of LSA-R.S. 22:658, in accepting, rejecting, or weighing the conflicting testimony and in correctly applying the relevant legal principles.
Therefore, for the reasons assigned, the judgment of the trial court is amended: (1) to assess a twelve percent penalty on the total amount of plaintiffs’ loss; and (2) to award $10,000.00 as reasonable attorney’s fees; and, as amended, the judgment of the trial court is affirmed at the cost of defendant-appellant, Louisiana Underwriters Insurance Company.
AMENDED AND AFFIRMED.